UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
384 BRIDGE STREET LLC,

      Plaintiff,

 -against-

RK&G ASSOCIATES LLC,

      Defendant.
-------------------------------------------------x

MEMORANDUM AND ORDER
09 CV 1704 (ILG)

GLASSER, United States District Judge:

## INTRODUCTION

  This action is derived from a landlord-tenant dispute over who shall bear the costs of investigating and cleaning up environmental contamination pursuant to the terms of a lease governed by New York law. Originally filed in the New York Supreme Court for Kings County, Defendant/Landlord RK&G Associates, LLC ("RK&G" or "the defendant"), asserting federal question jurisdiction, removed the case to this court contending that the complaint necessarily raises a substantial and disputed issue under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq. Pending before the Court is Plaintiff/Tenant 384 Bridge Street, LLC's ("384 Bridge" or "the plaintiff") motion to remand the case to state court and, pursuant to 28 U.S.C. § 1447(c), for costs and attorneys' fees. Its motion to remand is predicated on the ground that its state court complaint provides no basis for federal question jurisdiction and requires no construction of a federal statute. For the reasons stated below, the plaintiff's motion to remand is granted, and its motion for costs and attorneys' fees is denied.

# PROCEDURAL HISTORY

## I.  384 Bridge's State Court Complaint

On April 21, 2009, the plaintiff commenced this action in New York Supreme Court, Kings County.  (Docket entry #1 (Notice of Removal) Ex. A) ("Complaint").  The Complaint alleges that, on February 7, 2006, it entered into a 99-year lease agreement with the defendant ("the Lease") for the purpose of developing a 50-story mixed-use building at 384-394 Bridge Street in Brooklyn.  See Complaint ¶¶ 4-5.  The Complaint further alleges that, in the course of preparing for construction, the plaintiff discovered that the site was contaminated with perchlorethylene ("PCE"), a dry-cleaning solvent.[1]  See id. ¶ 20-23.  It then halted further activity in order to investigate and abate the contamination.  See id. ¶ 21-30.

In February 2009, the plaintiff sent the defendant a letter informing them of the PCE contamination and requesting reimbursement for the $1.2 million the plaintiff had already spent on investigation and cleanup.  See id. ¶ 31-36; Declaration of Roberta G. Gordon ("Gordon Decl."), dated Oct. 26, 2009, Ex. B. The letter expressed the belief that the defendant, as owner of the site, was potentially responsible for the PCE cleanup pursuant to CERCLA.  See Complaint ¶ 34.  After receiving no response, the plaintiff sent a second letter on April 2, 2009, informing the defendant that it was exercising its right under the Lease to offset against rent payments the monies it had spent on investigation and cleanup.  See id. ¶ 39; Gordon Decl. Ex. C.  The plaintiff alleged that its

---

[1]  According to the Complaint, the PCE had been released by a dry cleaning business owned by a member of the defendant which had operated on the premises for several decades prior to the commencement of the Lease period.  See Complaint ¶¶ 9-19.

rent offset rights under the Lease were "[a]part from CERCLA. . . ." <u>Id</u>. ¶ 40.  In a letter dated April 3, 2009 the defendant notified the plaintiff that it was in default for its failure to timely make a full rent payment for April 2009.  See <u>id</u>. ¶ 43; Gordon Decl. Ex. D.

The Complaint asserts two causes of action.  First, the plaintiff seeks a "Yellowstone injunction" preventing the defendant from terminating the Lease during the pendency of the action.[2]  The plaintiff also seeks a declaratory judgment that it is entitled under the Lease to offset against rent the PCE cleanup costs and to obtain indemnification from the defendant for future costs.  The provision of the Lease upon which the plaintiff bases its claim for the declaration it seeks is section 4.1 which in pertinent part provides as follows:

> 41.    . . . <u>Notwithstanding anything to the contrary in this Lease, Tenant need not pay, Tenant may offset against Rent any sums paid by Tenant on account of, and Landlord shall indemnify Tenant against payment of, the following items payable, accrued, or incurred by Landlord</u>: . . . . (f) any Real Estate taxes, insurance premiums, Operating Expenses, <u>or other costs related to the Property that accrued before the Commencement date</u>; . . . (h) any costs or expenses arising as a result of <u>the negligence or misconduct of Landlord</u> or its agents, contractors, employees, invitees or licensees, or the default by Landlord under this Lease; and (i) all other costs or expenses that, by their nature, are <u>personal to Landlord or Landlord's business of investing in real estate or ownership of the Fee Estate</u>.

---

[2] "The purpose of a Yellowstone injunction is to stay the cure period before it expires so as to preserve the lease until the merits of the dispute can be resolved in court, and neither nullifies the remedies to which a landlord is otherwise entitled nor rewrites the lease." <u>Cumberland Farms, Inc. v. Rian Realty, Ltd.</u>, No. 04 Civ. 3991, 2007 WL 1232072, at *14 n.8 (E.D.N.Y. Apr. 26, 2007) (quoting <u>Reade v. 405 Lexington, L.L.C.</u>, 19 A.D.3d 179, 180 (1st Dep't 2005)); <u>see</u> <u>also</u> <u>First National Stores, Inc. v. Yellowstone</u>, 21 N.Y.2d 630 (1968).

Complaint ¶ 41 (emphasis added in Complaint). The declaratory judgment cause of action incorporates all of the previous allegations of the Complaint and further alleges:

> 59. Pursuant to Section 4.1 of the Lease, Plaintiff/Tenant has offset against rent payable for the month of April 2009 sums paid by Plaintiff/Tenant in connection with the investigation and remediation of the contamination.
>
> 60. Defendant/Landlord has alleged that "Section 4.1 of the Lease does not authorize Tenant to offset against rent, the costs that Tenant alleges it has incurred in connection with the investigation and remediation of the perchlorethylene contamination at or in the vicinity of the Property.
>
> 61. Therefore, there is an actual justiciable controversy between the parties regarding whether Plaintiff/Tenant has offset rights under Section 4.1 of the Lease.

Complaint ¶¶ 59-61. Based upon these allegations, the plaintiff seeks a declaration that:

> under Section 4.1 of the Lease (i) Plaintiff/Tenant is entitled to offset against rent otherwise due under the Lease the sums paid and to be paid by Plaintiff/Tenant in connection with the investigation and remediation of the contamination, and (ii) Defendant/Landlord must indemnify Plaintiff/Tenant against payment of future sums in connection with the investigation and remediation of the contamination.

Complaint at 13.

## II. Defendant's Federal Court Action and Removal of the State Court Action

On April 13, 2009, the defendant commenced a separate declaratory judgment action in this court declaring that: (1) it was not required to indemnify the plaintiff for any PCE-related costs; and (2) even if it were, the rent offset provision of the Lease was not the appropriate vehicle for doing so. See Complaint in RK&G Associates, LLC v. 384 Bridge Street LLC et al., No. 09 Civ. 1510 (E.D.N.Y. filed Apr. 13, 2009). On October 1, 2009, the defendant amended the complaint to assert claims under CERCLA. (09 Civ.

1510 docket entry # 17). The plaintiff has moved to dismiss that action claiming a lack of subject matter jurisdiction and a failure to state a viable CERCLA claim. (09 Civ. 1510 docket entries # 18-20).

There are thus two actions pending in this court: the defendant's seeking a judgment which would declare that it bears no responsibility for the costs related to the contamination of the environment, and the plaintiff's state court action removed here by the defendant for which plaintiff seeks an order of remand by the motion now before the Court.

**DISCUSSION**

**I.      Legal Standards Governing Remand of an Action**

A state court action may only be removed to federal court if the action could originally have been filed there. <u>See</u> 28 U.S.C. § 1441(a) ("any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant. . . ."); <u>Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., LLC</u>, 357 F.Supp.2d 529, 533 (E.D.N.Y. 2004). As neither party has claimed diversity jurisdiction, removal must be justified by federal question jurisdiction, that is, the lawsuit must "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; <u>Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California</u>, 463 U.S. 1, 8 (1983). A state law action which "implicate[s] significant federal issues" may provide "arising under" jurisdiction. <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.</u>, 545 U.S. 308, 312 (2005); <u>see</u> <u>also</u> <u>Hopkins v. Walker</u>, 244 U.S. 486, 490-491 (1917). Such jurisdiction

over "federal issues embedded in state law claims" exists only where the state claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314; Broder v. Cablevision Systems Corp., 418 F.3d 187, 194 (2d Cir. 2005).  Although, "[a]s a general rule, a suit seeking recovery under state law is not transformed into a suit 'arising under' federal law merely because, to resolve it, the court may need to interpret federal law," Sullivan v. American Airlines, Inc., 424 F.3d 267, 271 (2d Cir. 2005) (citing Gully v. First Nat'l Bank, 299 U.S. 109, 115 (1936)), the plaintiff here makes no claim under federal law but claims entitlement to the relief it seeks is warranted by Section 4.1 of the Lease.

## II.     Application of These Standards to the Motion to Remand

In this case, the plaintiff's Complaint raises two state law causes of action: one for a Yellowstone injunction tolling the plaintiff's time to cure its alleged default and preventing the defendant from terminating the Lease and evicting the plaintiff; and one for a judgment declaring the plaintiff's right under the Lease to offset against rent the costs of investigating and cleaning up the PCE in and around the site.  The Complaint implicates federal jurisdiction only if one or both of these claims satisfy the Grable factors discussed above.

The defendant does not seek to establish subject matter jurisdiction based on the plaintiff's claim for a Yellowstone injunction, nor could it.[3]  It is only the plaintiff's

---

[3] This cause of action does not raise a federal issue.  A Yellowstone injunction "is an equitable device made available under New York law to prevent the cure period in a commercial real estate lease from expiring before the tenant can litigate its rights."

second cause of action, bottomed upon section 4.1 of the Lease which is at the heart of the dispute which can be succinctly stated to be as follows. Do two fleeting references in the Complaint to CERCLA provide a basis for finding federal question jurisdiction and justify removing the plaintiff's state court action here? A considered evaluation and analysis of the Complaint drives the Court to conclude that it does not. The validity of this conclusion is, it is submitted, convincingly established by asking whether the state complaint pleads two purely state causes of action if the two fugitive references to CERCLA were eliminated. The answer is yes, beyond cavil. It is clear that the plaintiff's reference to CERCLA was intended to be an evanescent one for paragraph 40 of its complaint reads "*[a]part from CERCLA* . . . pursuant to Section 4.1 of the Lease . . ., Landlord must indemnify Tenant . . . ." Complaint ¶ 40 (emphasis added). It is also plain that the plaintiff's claim for a declaratory judgment in its second cause of action is invested entirely in its belief of entitlement to it by the language of section 4.1. As "master of [its] complaint," the plaintiff was entirely free to "elect to proceed solely under state law even if federal remedies are available." NSI Intern., Inc. v. Mustafa, No. 09 Civ. 1536, 2009 WL 2601299, at *3 (E.D.N.Y. Aug. 20, 2009) (quoting In re "Agent Orange" Prod. Liab. Litig., 996 F.2d 1425, 1430 (2d Cir.1993)). To the extent that an

---

Broad Financial Center LLC v. National Ass'n of Securities Dealers, Inc., 187 F.Supp.2d 139, 140 (S.D.N.Y. 2002). To obtain a Yellowstone injunction, a tenant must show that:

> (1) it holds a commercial lease; (2) it received from the landlord either a notice of default, a notice to cure, or a threat of termination of the lease; (3) it requested injunctive relief prior to the termination of the lease; and (4) it is prepared and maintains the ability to cure the alleged default by any means short of vacating the premises.

Id. (citing Graubard Mollen Horowitz Pomeranz & Shapiro v. 600 Third Ave., 93 N.Y.2d 508, 514 (1999)). To the extent, if at all, that any of these elements raise a question of law in this case, they are questions of New York law.

ambiguity may be lurking in section 4.1, it would pertain only to the rights and obligations of the parties to that landlord-tenant relationship which a state court judge not infrequently resolves and warrants no federal court intervention. Accordingly, the Court finds that the Complaint presents no necessary and substantial federal issues.

In support of federal jurisdiction, the defendant relies heavily on the Supreme Court's opinion in <u>Grable</u> and the Second Circuit's opinion in <u>Broder</u>. However, both of these cases are clearly distinguishable from this case. <u>Grable</u> involved a quiet title action originally brought in a Michigan state court. Grable contended that the IRS had improperly seized his real property and resold it to the defendant, Darue. Grable specifically alleged that, even though the IRS had provided him actual notice of the seizure by certified mail, it had not complied with the relevant provision of the federal tax code which, according to Grable, required personal service of the notice of seizure. Darue removed the case, and the federal district court for the Western District of Michigan denied Grable's motion for remand, finding that Grable's state claim posed a "significant question of federal law." <u>Grable</u>, 545 U.S. at 311. The Supreme Court agreed, finding that, in order to succeed on its quiet title claim under Michigan law, Grable was required to demonstrate a "failure by the IRS to give it adequate notice, as defined by federal law." <u>Id</u>. at 314-15. The Court stated that, "[w]hether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case." <u>Id</u>. at 315.

In this case, the plaintiff is not required to nor does it seek to establish that the defendant is liable under CERCLA for the PCE cleanup. Unlike Grable, 384 Bridge has

8

not based its claim for a declaratory judgment on RK&G's violation of a federal statute. Indeed, as discussed *supra*, the plaintiff's claim is based entirely on its rights under the Lease. And it is certainly not the case that the defendant's potential CERCLA liability is "the only legal or factual issue contested in the case."

This case is also easily distinguished from Broder. There, the Second Circuit upheld a denial of plaintiff's motion to remand a putative class action claiming that Cablevision had violated a contract and various state and federal statutes based on its offer of discounted "Winter Season" rates to some customers but not to the plaintiff class members. Like the Complaint in this case, Broder's complaint included only state law causes of action. However, Broder's complaint specifically asked the state court to declare that Cablevision's behavior violated 47 U.S.C. § 543(d), a federal statute regulating the conduct of cable providers. See id. at 195. The Second Circuit stated the self-evident conclusion that "Broder cannot obtain the declaratory judgment he seeks, stating in part that Cablevision violated 47 U.S.C. § 543(d), without prevailing on the issue of whether Cablevision in fact violated 47 U.S.C. § 543(d)." Id. Here, the plaintiff's claim for declaratory relief does not contain a request for a declaration that the defendant violated CERCLA or any other federal statute.[4]

There is in this case an additional reason to avoid reading a federal issue into the Complaint where one is not explicitly asserted. Issues of commercial lease interpretation are "fundamentally a matter of state law." United Mutual Houses, L.P. v. Andujar, 230 F.Supp.2d 349, 354 -355 (S.D.N.Y. 2002); Hearn v. Lin, No. 01-CV-8208,

---

[4] In addition, 47 U.S.C. § 543(d) was incorporated by reference into the underlying contract between Broder and Cablevision. Broder, 418 F.3d at 195. Here, there is no claim that CERCLA or any other provision of federal law was incorporated into the Lease.

9

2002 WL 720829, at *4 (E.D.N.Y. Feb. 14, 2002). Federal courts appropriately "abstain in landlord-tenant actions, as they 'involve[ ] complex questions of state law that bear on important state policy issues.'" Soms v. Aranda, No. 00 Civ. 9626, 2001 WL 716945, at *1 (S.D.N.Y. June 26, 2001) (quoting Fischmann v. Visiontel, Inc., 934 F.Supp. 115, 117 (S.D.N.Y.1996); see also Pisciotta v. Dobrynina, No. 08 Civ. 5221, 2009 WL 159605, at *3 n.3 (E.D.N.Y. Jan. 22, 2009) (referring to the "long line of cases in which district courts have held that landlord-tenant matters present no federal question"). These considerations of comity and federalism drive the Court to conclude that a New York court should interpret the meaning of the specific provisions of the Lease at issue here and the remedies available thereunder. Because the Complaint does not necessarily raises a federal issue, this Court lacks subject matter jurisdiction and the case must be remanded.

### III. Plaintiff's Motion for Fees Pursuant to 28 U.S.C. § 1447(c)

Plaintiff seeks to recover attorneys' fees and costs under 28 U.S.C. § 1447(c), which provides in pertinent part: "An order remanding the case may require payment of just costs and actual expenses, including attorney fees, incurred as the result of the removal." Under that provision, an award is discretionary, and is not predicated on a finding that removal was made improvidently, or in bad faith. Morgan Guar. Trust v. Republic of Palau, 971 F.2d 917, 924 (2d Cir.1992). Section 1447(c) "affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees, . . . [and] requires application of a test of overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties." Id. at 923-24 (citation and internal quotation omitted). The defendant's removal of the case, based as it was, in the

10

Court's view, on a flawed expansive reading of the complaint, is nevertheless understood as a zealous advocate's imaginative reading of it not warranting the imposition of costs and attorneys' fees.

The parties are directed to appear before the Court at 3 o'clock p.m. on December 10, 2009 for a status conference pertaining to the motion to dismiss the defendant's complaint in this court.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion to remand this case to the Supreme Court for Kings County is GRANTED, and plaintiffs' motion for costs and fees is DENIED.

**SO ORDERED.**

Dated:   Brooklyn, New York
         December 7, 2009

/s/

I. Leo Glasser
United States Senior District Judge

**Copies of the foregoing memorandum and order were electronically sent to:**

Counsel for Plaintiff:

David S. Tannenbaum
Stern Tannenbaum & Bell
380 Lexington Avenue
Suite 3600
New York, NY 10168

Steven C. Russo
Sive, Paget & Riesel, P.C.
460 Park Avenue
New York, NY 10022

Counsel for Defendant:

Roberta G. Gordon
Bryan Cave LLP
1290 Avenue Of The Americas
New York, NY 10025